The Full Commission reviewed this matter on July 16, 2008, upon appeal of plaintiff from an Opinion and Award by Deputy Commissioner Theresa B. Stephenson filed January 14, 2008.
 * * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument of the parties. The appealing party has not shown good ground to receive further evidence or rehear the parties or their representatives. Following its review, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Full Commission and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated. There is no question as to misjoinder *Page 2 
or nonjoinder of the parties.
3. The parties were subject to the Workers' Compensation Act at the time of the alleged injury and an employer-employee relationship existed between them. The above-designated carrier was on the risk at the time of the injury, alleged or otherwise.
4. Plaintiff contends that he suffers from a compensable injury to his right upper extremity and shoulder bearing an injury date of September 14, 2006. Defendants have denied this claim pursuant to the Form 61 filed with the Industrial Commission.
5. Plaintiff's average weekly wage was $382.91, yielding a compensation rate of $255.27.
6. Records and documentary evidence were introduced into evidence as Stipulated Exhibits.
 * * * * * * * * * * * ISSUES
Whether plaintiff sustained a compensable injury by accident arising out of and in the course of his employment?
To what, if any benefits is plaintiff entitled?
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 41 years of age. Plaintiff testified that he injured his right shoulder on September 14, 2006 while employed with defendant-employer as a welder. Plaintiff had worked for defendant-employer for approximately two months at the time of his injury. Defendants denied the compensability of *Page 3 
plaintiff's claim based on inconsistencies revealed during investigation of the claim and due to a lack of medical evidence relating plaintiff's shoulder complaints to the alleged fall of September 14, 2006.
2. Brian Barefoot, a project manager with defendant-employer, testified that he first met plaintiff in early September 2006, shortly after plaintiff was hired. Mr. Barefoot described a conversation he had with plaintiff in which he informed plaintiff that he injured his shoulder a year and a half before and underwent surgery. Mr. Barefoot recommended his doctor and told plaintiff where his surgery was performed. According to Mr. Barefoot, plaintiff told him that he had injured his shoulder either in a rodeo or when horseback riding and that he was going to undergo an operation as soon as he received insurance coverage. Mr. Barefoot testified that this conversation took place just after plaintiff was hired by defendant-employer and prior to September 14, 2006.
3. Plaintiff testified that on September 14, 2006 he was working with a co-worker, Mike Lecesse, at the Cody perfume plant in Sanford, North Carolina. He and Mr. Lecesse were tearing up a floor comprised of raised floor panels that rested on steel pedestals. Beneath the raised panes were wires. Plaintiff was standing on a section of the floor when the pedestals collapsed. Plaintiff fell about a foot, landing on his right knee. Although he attempted to catch himself with his right arm, he grabbed for a door handle but missed it. His right shoulder then struck the wall and doorway. In disputed testimony, plaintiff claimed that both Lynn Baker, plaintiff's supervisor, and Tim Skibitsky, the president and minority owner of defendant-employer, visited the job site that day, at which time plaintiff told them he had been injured.
4. Ms. Virginia Bates met plaintiff in February 2006. She and plaintiff lived together from April 2006 through Thanksgiving of that year. Ms. Bates stated that plaintiff was *Page 4 
living with her on September 14, 2006, the date of his alleged injury and that plaintiff injured his knee around that time. As she testified, plaintiff came home from work in mid-September and told her that his knee was hurting and described a fall. Plaintiff did not mention anything at all about his shoulder at that time.
5. In disputed testimony, plaintiff testified that the next morning, September 15, 2006, he had a catch in his neck and had trouble raising his right arm or turning his neck. Plaintiff claimed that he used a jackhammer on one job that exacerbated his pain and that afterward he told Brian Barefoot, the project manager, he hurt his shoulder and needed to go to the hospital.
6. Plaintiff testified that he was able to work until October 4, 2006 and that after his fall he was doing the same duties he had been doing prior to the fall. In his responses to discovery, verified on January 2, 2007, plaintiff indicated that he had very limited leisure activities after the fall.
7. On October 4, 2006, plaintiff presented to UNC Hospitals and complained of right shoulder pain for three weeks. He denied having an accident or trauma to his shoulder. Plaintiff reported that he did not fall, and denied injury from raising his arm, dislocation, twisting, being crushed, or receiving a direct blow. The medical notes from that visit indicate that the injury "occurred at home" and progressively worsened over the past two weeks. This is the first written document concerning the onset of plaintiff's symptoms.
8. Timothy Skibitsky, the president and minority owner of defendant-employer, disagreed with plaintiff's testimony that he told Mr. Baker about his fall on the day it occurred. Mr. Skibitsky testified that the first time he heard of plaintiff's injury was in October 2006. Mr. Skibitsky recalled seeing plaintiff driving his personal car in Sanford during work hours and *Page 5 
contacted Lynn Baker to find out why plaintiff was away from the job site. Mr. Baker attempted to contact plaintiff but was unable to reach him until the next day at which time plaintiff informed them that his shoulder was injured. Plaintiff did not specify how his injury had occurred. Company policy requires when an accident occurs on the job, employees are to report it to a foreman, who then files a report and has a drug test administered.
9. On October 9, 2006, plaintiff presented to Dr. Thomas Koonce at the UNC Hospitals Family Medicine Center. Plaintiff reported a gradual onset of right shoulder pain for two and a half weeks. He indicated that he had experienced a gradual onset of pain since using a jackhammer for several hours one day. The report states that plaintiff could not recall any other specific injury. The assessment was a likely rotator cuff tear and an MRI was ordered. Plaintiff was to avoid lifting with his right arm.
10. On October 12, 2006, plaintiff presented to Dr. Anthony Viera at the UNC Hospitals Family Medicine Clinic. Plaintiff reported that he pulled his shoulder about three weeks before, that he did not know how, and that it had been hurting ever since. Plaintiff underwent an MRI on October 12, 2006. The impression was overgrowth at the acromioclavicular joint with supraspinatus impingement with no evidence of full thickness cuff tear.
11. In an undated handwritten statement made after the October 12, 2006 MRI, plaintiff alleged that he fell working at the Cody perfume plant, tried to catch himself, and pulled his shoulder, which became more painful after using a jack hammer at work.
12. Plaintiff again presented to Dr. Koonce on October 16, 2006. Dr. Koonce opined that plaintiff's MRI revealed right shoulder impingement syndrome, but no obvious rotator cuff injury. An examination revealed pain to palpation over nearly all of plaintiff's shoulder and *Page 6 
limited range of motion with forward flexion of his right arm. Plaintiff agreed to an injection to his shoulder and was scheduled for physical therapy. Dr. Koonce drafted a note that plaintiff suffered from right shoulder pain and had been diagnosed through an MRI with impingement syndrome. He wrote, "This most likely results from vigorous, repetitive overuse at work." At his deposition, Dr. Koonce testified that he most likely wrote this note at the October 16, 2006 visit.
13. In late October 2006, plaintiff returned to defendant-employer and provided a note that released him from work for three weeks. Plaintiff was asked to coordinate his return to work with his supervisor, Mr. Baker, when fully released. At the time of the hearing before the Deputy Commissioner, Mr. Skibitsky had not seen documentation that plaintiff has been released to work and that plaintiff had not attempted to return to work.
14. Mr. Skibitsky testified about a conversation that he had with plaintiff in the company parking lot in late October 2006. Plaintiff told him that he had purchased a new pick-up truck but it was difficult for him to drive the truck with one arm. Mr. Skibitsky testified that he was aware of plaintiff's work restrictions and that he had seen plaintiff's activities in surveillance videos submitted into evidence. Mr. Skibitsky testified that there was work available for plaintiff at the same level at which plaintiff was working on the video and that he had jobs available that did not require heavy lifting. Plaintiff would be able to assist the crews. Plaintiff could help on a job site and that there are positions where the employee stands and operates a scissor lift. Suitable jobs are available that pay wages between $10.00 and $13.00 an hour, which is consistent with the $10.00 an hour plaintiff was earning.
15. On October 30, 2006, plaintiff returned to Dr. Koonce for follow-up of his shoulder pain. The injection and physical therapy had given plaintiff some relief. Plaintiff *Page 7 
reported that he did not feel that he could return to work at that time as he had limited range of motion and too much activity exacerbated his symptoms. Plaintiff reported continued pain with elevation of his hand above his head, and Dr. Koonce agreed to administer another injection at plaintiff's request. Dr. Koonce wrote, "This is a 41 year-old male with shoulder pain and impingement syndrome, after jackhammer use." Dr. Koonce prescribed additional physical therapy and released plaintiff from work for at least three more weeks until reevaluation.
16. On October 31, 2006, Marta Fitzpatrick, the adjuster for defendant-carrier, obtained plaintiff's recorded statement. In the statement, plaintiff indicated that flooring struck him in the knee and caused him to fall. He stated that he reached out to grab the doorframe, but missed and injured his shoulder when he fell on wires and steel pedestals. Plaintiff reported that he had a catch in his right shoulder and neck, but that he thought it would be all right and did not report it to Lynn Baker, his supervisor. Plaintiff claimed he reported the injury to Brian Roberts, an office worker with defendant-employer on October 4, 2006 before he went to the emergency room in Chapel Hill. Plaintiff denied having prior workers' compensation claims, denied any prior work injuries, and denied any prior injuries other than appendicitis.
17. In his Form 18 filed November 6, 2006, plaintiff reported that he injured his right upper extremity when he caught himself after falling when a floor gave way.
18. Plaintiff presented to Dr. Koonce again on November 21, 2006 and reported that his pain and range of motion had improved. Dr. Koonce noted that plaintiff had continuing shoulder pain, a prolonged course of symptoms, and a slow response to physical therapy and, as a result, referred plaintiff for an orthopedic opinion.
19. In early December 2006, plaintiff worked for the Pound Cake Company. However, plaintiff did not report this in his response to defendants' interrogatories on January 2, *Page 8 
2007 because, according to him, it was a simple job and he was just trying to make some money to get the bills paid. On May 6, 2007, plaintiff provided supplemental responses to defendants' pre-hearing interrogatories, in which he indicated that he worked at The Pound Cake Company in Benson, North Carolina from December 2006 through March 2007. He was paid $7.00 an hour but was not listed on the company's payroll. Plaintiff had no specific job title and was paid with company checks. Plaintiff also reported that he was employed as an oil changer at Stewart Tire Services in Coats, North Carolina on approximately May 23, 2007. He earns $65.00 per day and works 40 hours per week.
20. Dr. Koonce opined that plaintiff's work duties of using a jackhammer caused or attributed to plaintiff's right shoulder impingement syndrome. Dr. Koonce did not address whether any alleged fall caused plaintiff's shoulder condition.
21. Plaintiff has failed to establish by the greater weight of the competent medical evidence of record that his job duties exposed him to a greater risk of developing right shoulder impingement syndrome than members of the public not so employed.
22. The Full Commission finds that plaintiff failed to prove by the greater weight of the evidence that he sustained a compensable injury by accident on September 14, 2006 or an occupational disease as a result of his employment with defendant-employer.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6). *Page 9 
2. The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of the employment. Henry v.Leather Co., 231 N.C. 477, 57 S.E.2d 760 (1950). In the present case, plaintiff failed to prove by the greater weight of the evidence that he suffered a compensable injury by accident arising out of and in the course of his employment on or about September 14, 2006. N.C. Gen. Stat. § 97-2 (6); Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682
(1982).
3. Plaintiff failed to show that a causal relationship existed between the incident on January 24, 2005 and any disability for which compensation is sought. Click v. Freight Carriers, 300 N.C. 164,265 S.E.2d 389 (1980).
4. Therefore, plaintiff is not entitled to benefits under the Workers' Compensation Act for his alleged right shoulder injury. N.C. Gen. Stat. § 97-29.
5. There is insufficient evidence to conclude that plaintiff's right shoulder impingement syndrome arises out of an occupational disease. In order to establish an occupational disease under N.C. Gen. Stat. § 97-53(13), a claimant must show: (1) the disease is characteristic of individuals engaged in the particular trade or occupation in which the plaintiff is engaged; (2) the disease is not an ordinary disease of life to which the public is equally exposed with those engaged in that particular trade or occupation; and (3) there is a causal relationship between the disease and the claimant's employment. Rutledge v. TutlexCorp., 308 N.C. 85, 301 S.E.2d 359 (1983).
2. In the present case, plaintiff failed to prove by the greater weight of the evidence that his employment caused or was a significant contributing factor in his development of right *Page 10 
shoulder impingement syndrome, that the right shoulder impingement syndrome was characteristic of or peculiar to her employment, or that he was at an increased risk of developing this condition due to his work.Hansel v. Sherman Textiles, 304 N.C. 44, 283 S.E.2d 101 (1981).
3. Therefore, plaintiff did not contract a compensable occupational disease within the meaning of the law. N.C. Gen. Stat. § 97-53(13).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim under the law must be and is hereby denied.
2. Both sides shall pay the costs.
This the 6th day of August 2008.
S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ DANNY L. McDONALD
 COMMISSIONER S/___________________ CHRISTOPHER SCOTT COMMISSIONER